ST. PAUL'S CATHOLIC CHURCH OF GREENVILLE, PROSECUTORS, v. MAYOR AND ALDERMEN OF JERSEY CITY ET AL., DEFENDANTS.

Submitted November 2, 1910—Decided February 28, 1911.

A street railway company operating under the act of 1893 (*Gen. Stat.. p.* 3235) obtained in that year from Jersey City, by ordinance, a consent to the filed location of its route, but without a lawful designation of the location of its tracks in the streets named as constituting such route. In 1910 the city undertook to amend

the original ordinance by designating such location of tracks. &c. *Held*, that the original ordinance conferred no right of construction and that such right could not be acquired without compliance with the requirements of the later act of 1894 (*Pamph. L., p.* 374), as modified by the further act of 1896 (*Pamph. L., p.* 329).

On *certiorari.*

Before Justices REED, PARKER and BERGEN.

For the prosecutors, *Herrmann & Steelman.*

For the defendants, *Frank Bergen, Gilbert Collins* and *Warren Dixon.*

The opinion of the court was delivered by

PARKER, J.  The question for determination in this case is the legality of an ordinance passed by the board of street and water commissioners of Jersey City on August 29th, 1910, approved September 7th, 1910, purporting to amend a prior ordinance of 1893, passed in intended conformity to the Street Railway act of that year (*Gen. Stat., p.* 3235), "to authorize the Consolidated Traction Company to locate, construct, operate and maintain certain street railways over and through certain streets in Jersey City."

The original ordinance was defective in that, while perhaps sufficient as a consent to the location of the route of the street railway so as to confer the pre-emption rights provided in section 6 of the act, it left to the discretion of the company the location of the tracks of the railway in the designated streets —a distinction made plain in *Theberath* v. *Newark,* 28 *Vroom* 309, 311—and, consequently, came within the precise ruling that was made in that case.

So far as relates to the section of track now in question through Old Bergen Road, on which the prosecutor is an abutting owner, the matter remained in this condition for seventeen years.  In some streets the road was built and operated, notwithstanding the insufficiency of the ordinance.  In some others the route was abandoned, and as to them the ordinance

repealed. Finally, in 1910, the board undertook to pass the amendatory ordinance now drawn under review, and which in form specifically provides for a location of the tracks in the streets by metes and bounds, and the character and placing of poles, &c., over a route past the property of prosecutor, sufficiently to comply with the rule laid down in the Theberath case. The objections now made are that it was not published in the manner required by law, and that the board had no power to pass it without a previous consent of a majority in frontage of the property owners on the street. These objections are based on legislation coming after the act of 1893; and the real question for decision is whether such legislation applies to this case. The defendants claim that having a *status* originally under the act of 1893, and the ordinance having been passed pursuant to that act, it could be amended even in this fundamental particular, notwithstanding changes in the law occurring before any actual right of construction was acquired under the older act.

Bearing in mind the distinction drawn in Theberath *v.* Newark, between "location of route" and "location of tracks," we proceed to the later acts, which are not supplements to the act of 1893, but independent enactments. The first is that of 1894, page 374 (*Gen. Stat., p.* 3247), "An act to regulate the construction and maintenance of street railroads in this state." Section 1, which is very lengthy, provides in substance that in addition to the provisions and restrictions now required by law, no street railroad shall thereafter be constructed through streets, &c., except on consent of the governing body of the municipality based on a petition of the company, and after notice published in a specified manner, and containing specified particulars, and only after the filing of a written consent of owners of at least one-half the frontage on the part of the street, &c., through which the road is proposed; whereupon the municipality may grant by ordinance or refuse by resolution, "permission to construct, maintain or operate such street railway," &c. Section 2 provides that the act "shall not apply to any case in which a location has heretofore been granted, and the work of construction commenced, as pro-

vided for under any existing law; and all applications pending shall be proceeded with in conformity with the provisions of this act."

The act of 1894 was considered in *Camden Horse Railroad v. Traction Company*, 29 *Vroom* 102, where it was held that "the provision of the act of 1893 respecting the consent of the municipalities has been superseded or modified by the act of 1894, and a corporation formed under the first act must, in order to construct its railroad, not only procure a location of the tracks as required by the act of 1893, but also a permission or consent of the municipality as required by the act of 1894." It is likely that the learned justice who wrote the opinion meant by "location of the tracks" what Mr. Justice Dixon in the former case distinguished as "location of the route;" but be this as it may, this court then held squarely that the act of 1894 was controlling on questions of construction. This indeed is evident from its opening sentence and from the saving provisions of section 2; but to come within that section there must not only be a "location granted," but the work of construction must have been actually commenced. The railroad company in this case was not in a position to claim the benefit of either condition. The act of 1894 contains no express repealer, but its clear and unmistakable intent is to repeal prior acts under which the right of construction might be acquired in any manner different from that which it laid down.

In 1896 another independent act was passed, by the same title as that of 1894, and the first section of which is substantially identical in language, but adding a provision that a consent for construction implies the right to erect suitable poles, wires, &c.; also that the proposed location of tracks, poles, &c., is to be shown on a map accompanying the petition; and an important provision that the municipal body "may either at the time of giving its permission as aforesaid, or at a subsequent time, fix and determine by resolution the location of the rails and tracks * * * and * * * the place or places in which poles shall be located and conduits constructed." This last provision is sweeping in character and

essentially modifies the pre-existing law, but without affecting the result in this case. The company had, under the ordinance of 1893, a consent to its route only, without any right to build because of a failure to designate lawfully the location of its tracks. It never built at the point in question till work was commenced under the ordinance now before us, and could not acquire that right under the act of 1893 by the latter ordinance because the acts of 1894 and 1896 came in and forbade any consent to construction without the preliminaries of a notice differing from that provided in the act of 1893, and a consent of property owners. No such notice has been given and no such consent secured. As a result, the board of street and water commissioners was without jurisdiction to pass the ordinance under review; and it will therefore be set aside, with costs.